CASE NO. 11-2479


IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


UNITED STATES OF AMERICA,

      Plaintiff/Appellee,

vs.

ROBERTO ESPINOSA FARIAS,

      Defendant/Appellant,


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRIEF OF THE DEFENDANT/APPELLANT
ROBERT ESPINOA-FARIAS


J. PATTEN BROWN, III
ATTORNEY AT LAW
Attorney for
ROBERTO ESPINOSA FARIAS
757 West Main Street
New Britain, CT
(860) 223-3355

TABLE OF CONTENTS

Page

Table of Authorities          . . . . . . . . . . .          iii

Statement in Support of
Oral Argument                 . . . . . . . . . . .          1

Statement of Jurisdiction     . . . . . . . . . . .          2

Issue Presented for Review    . . . . . . . . . . .          3

Statement of the Case         . . . . . . . . . . .          4

Proceedings and Disposition
in the District Court         . . . . . . . . . . .          4

Facts Relevant to the Case    . . . . . . . . . . .          6

Summary of Argument           . . . . . . . . . . .          17

Argument                      . . . . . . . . . . .          19

Conclusion                    . . . . . . . . . . .          26

Certificate of Compliance     . . . . . . . . . . .          27

Certificate of Service        . . . . . . . . . . .          28

Addendum                      . . . . . . . . . . .          29

TABLE OF AUTHORITIES

*Cases*                                                          *Page*

Graham v. Florida,
560 U.S. ---, 130 S.Ct. 2011 (2011). . . . . . . . . .17, 21-22

Harmelin v. Michigan,
501 U.S. 957, 111 S.Ct. 2680 (1991). . . . . . . . . . . . . .24

Kennedy v. Louisiana,
554 U.S. 407, 128 S.Ct. 2641 (2008). . . . . . . . . . . . .20

United States v. Chambers,
441 F.3d 438 (6th Cir. 2006) . . . . . . . . . . . . . . . 19

United States v. Copeland,
321 F.3d 582 (6th Cir. 2003) . . . . . . . . . . . . . . . 19

United States v. Hill,
30 F.3d 48 (6th Cir. 1994) . . . . . . . . . . . . . . . . 24

United States v. Murdock,
398 F.3d 491 (6th Cir. 2005) . . . . . . . . . . . . . . . 20

United States v. Olano,
507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . 19

Weems v. United States,
217 U.S. 349 (1910). . . . . . . . . . . . . . . . . . . . 20

## ***Statutes and Sentencing Guidelines***

IIX Amendment, U.S. Const. . . . . . . . . . . .17, 19-21, 24-25

18 U.S.C. § 3553. . . . . . . . . . . . . . . . . . . . 14

21 U.S.C. § 841. . . . . . . . . . . . . . . . . . . . .4

21 U.S.C. § 846. . . . . . . . . . . . . . . . . . . .2, 4

21 U.S.C. § 851. . . . . . . . . . . . . . . . . 4, 7, 25

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . 2

USSG § 2D1.1(B)(1) . . . . . . . . . . . . . . . . . . 11

iv

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Comes now counsel for the defendant, Roberto Espinosa-Farias, pursuant to Sixth Circuit Rule 34(a), and requests that oral argument be heard in this case. This appeal presents significant legal issues, and oral argument may assist this Honorable Court in reaching the decision herein.

STATEMENT OF JURISDICTION

The district court had jurisdiction of this case because the defendant, Roberto Espinosa Farias, was charged by Third Superseding Indictment on September 22nd, 2010 at Count 1 with a violation of 21 U.S.C. §846, Conspiracy to Distribute Controlled Substances and under 21 U.S.C. §841(a)(1) with possession with the intent to distribute Cocaine. (RE-349, Third Superseding Indictment).

The Sixth Circuit Court of Appeals has jurisdiction to hear the present appeal pursuant to Title 28 U.S.C. § 1291. The defendant filed a notice of appeal on November 21st, 2011, from the judgment in a criminal case docketed November 9th, 2011. (RE-691, Notice of Appeal; RE-682, Judgment).

## ISSUE PRESENTED FOR REVIEW

<u>Issue</u>: Whether the sentence imposed by the district court constitutes cruel and unusual punishment under the Eighth Amendment.

STATEMENT OF THE CASE

Nature of the Case

Roberto Espinosa Farias appeals his conviction and sentence imposed in the United States District Court for the Western District of Michigan before the Honorable United States Judge Paul L. Maloney.   The Judgment Including Sentence under the Sentencing Reform Act was filed on November 9th, 2011, and a timely Notice of Appeal was filed on November 21st, 2011. (RE-682, Judgment; RE-691, Notice of Appeal).

Proceedings and Disposition in the Trial Court

On September 22nd, 2010, a Third Superseding Indictment with multiple counts was filed against Mr. Espinosa Farias in the United States District Court for the Western District of Michigan, Southern Division in it's relevant part charging Mr. Espinosa Farias at Count I with a violation of 21 U.S.C. §846, Conspiracy to Distribute Controlled Substances and under 21 U.S.C. §841(a)(1) with possession with the intent to distribute Cocaine. (RE-349, Third Superseding Indictment).

The defendant entered into a written plea agreement with the Government on April 14th, 2011 to Enter a Plea of Guilty as to Count 1 in exchange for, among other things, an agreement that the government would not file a 21 U.S.C. §851 enhancement mandating a life sentence, that the government would not call

4

Mr. Espinosa Farias as a witness in the upcoming trial and, in addition to pleading guilty, the accused executed a conditional waiver of his right to appeal his sentence. (RE-570; PLEA AGREEMENT).

On April 18th, 2011, Mr. Espinosa Farias pled Guilty to Count I of the Third Superseding Indictment and the preparation of a Pre-Sentence Investigation Report, hereinafter referred to as a "PSR", was Ordered.  (RE-580, Minutes of Change of Plea.). Thereafter, a PSR was prepared.  A Sentencing Memorandum and Objection were filed by trial counsel for Mr. Espinosa Farias. (RE-674, Sentencing Memorandum & RE-675, Objection).  There is no record in the ECF Docket Sheet of the government having filed a Sentencing Memorandum.

On November 7th, 2011 a Sentencing Hearing was held.  (RE-676, Minutes of Sentencing Hearing).  On November 9th, 2011, the district court entered a judgment sentencing the defendant to 340 months in custody followed by 5 years supervised release; a $25,000.00 fine and a $100 special assessment (RE-682, JUDGEMENT).

A timely Notice of Appeal was filed on November 21st, 2011. (RE-691, NOTICE OF APPEAL).

FACTS RELEVANT TO THE CASE

On April 18th, 2011, the Court, conducted a Change of Plea Hearing. (RE-580, Minutes of Change of Plea). It began by placing Mr. Espinosa Farias under oath. (RE-744, Transcript, hereinafter referred to as "Tr.", Page 3, Line 10). The Court then proceeded to ask Mr. Espinosa Farias a series of questions meant to ascertain whether he was able to read and write in English and his general competency to plead. (RE-744, Tr., Pages 3-4).

The Court ensured he understood that any false statements could subject him to perjury or false statement charges. (RE-744, Tr., Page 4, Lines 6-9). It was determined that Mr. Espinosa Farias has been represented by counsel and had ample opportunity to discuss the case with his lawyer. (RE-744, Tr., Page 4, Lines 11-17). He was further advised of his right to plead "not guilty" and proceed to trial and also to have his lawyer represent him throughout a trial. (RE-744, Tr., Page 4, Lines 18-22).

The Court then discussed the existence of the plea agreement and asked the Assistant United States Attorney to read the most important provisions into the record. (RE-744, Tr., Page 5, Lines 3-8). The Assistant United States Attorney then

proceeded to do so in detail.  Among the features of the plea
agreement read by counsel for the Government were:

1. An agreement by the accused to plead guilty.

2. An acknowledgement by the accused of the elements of the
   offense of conviction.

3. A description of the maximum penalties.

4. A description of Supervised Release.

5. A stipulation of facts to ascertain guilt and that there
   is no dispute that the drug quantity is in excess of five
   (5) Kilograms of cocaine and that the accused received a
   $80,000 payment from a co-defendant  for five kilograms
   of cocaine.

6. That the government will not oppose a request for a
   reduction for acceptance of responsibility provided he
   accepts responsibility.

7. The government will refrain from filing the 21 U.S.C §851
   enhancement which for his two prior felonies would
   mandate a life sentence.

8. That the accused will not be charged with any additional
   crimes arising out of his drug trafficking.

9. That the government will not call him as a witness in the
   trial of his son, Roberto Juan Farias, Jr.

10. That the accused agrees to forfeit all of the property listed in the Third Superseding Indictment, though none was actually taken from him as far as is known to the government as of the date of the plea.

11. That the accused is "...agreeing to a complete waiver...of the direct appeal and collateral attack rights..." unless the sentence exceeds the statutory maximum or was otherwise unconstitutional.

12. An acknowledgement by the accused about the role of the United States Sentencing Guidelines and that they will be consulted.

13. That the agreement contains a description of all the Constitutional rights the accused will be giving up by virtue of his guilty plea, this being contained in ¶9 of the agreement.

14. That the accused entered into the plea agreement knowingly and voluntarily.

(RE-744, Tr., Pages 4-8).

The Court then inquired of counsel for the accused if she agreed that such was the substance of the written agreement and she replied that it was.  (RE-744, Tr., Page 8, Lines 24-25). Mr. Espinosa Farias was asked whether he had ample time to read the agreement and go over it with his lawyer; he agreed such was

8

the case.    (RE-744, Tr., Page 9, Lines 3-6).   He confirmed twice for the Court that he had indeed signed it, that he wanted the benefit of the agreement after full consultation with his lawyer and had done so freely and voluntarily.  (RE-744, Tr., Page 9, Lines 6-25).

The Court then went over the charge to which the accused was pleading guilty which includes the elements of the offense. (RE-744, Tr., Page 10, Lines 5-19). The statutory maximum of life and mandatory minimum of ten years were then explained to Mr. Espinosa Farias and he stated he understood.  (RE-744, Tr., Page 10, Line 21-Page 11, Line 2).   The maximum fine, the special assessment, forfeiture allegations and supervised release were then explained by the Court.  (RE-744, Tr., Page 11, Lines 6-21).

The Court then went onto explain the PSR and the sentencing guidelines, specifically the fact they are advisory, and the accused stated he understood and been over their application with his lawyer.  (RE-744, Tr., Page 11, Line 22-Page 12, Line 10).   The accused then pled Guilty to Count I and it was accepted by the Court only after the Court ascertained he was not being threatened or coerced in any way, was pleading guilty because he was in fact guilty and also explained to Mr. Farias Espinosa that he was giving up his right to a jury trial, the

9

presumption of innocence, the right to compulsory process and to cross examine the witnesses for the government and the right not be compelled to testify in his own case and that he would be giving up those rights permanently were he to proceed. (RE-744, Tr., Page 12, Line 14-Page 15). During that lengthy colloquy, the Court again went over the appeal waiver provisions of the plea agreement reminding Mr. Espinosa Farias that he was giving up his right to appeal his sentence with one of the exceptions being sentencing to an unconstitutional sentence. (RE-744, Tr., Page 15, Lines 2-18).

As part of his plea, the Court asked Mr. Espinosa Farias a series of questions to ascertain whether he was in fact guilty. He stated that he had distributed, or trafficked to be precise, Cocaine to "Donnie" in excess of five kilograms and that he knew it was illegal. (RE-744, Tr., Pages 16-18). The formal acceptance of the plea was based on this colloquy. (RE-744, Tr., Page 21, Lines 1-5).

Prior to the sentencing hearing in this case, the United States Probation Office prepared a presentence investigative report ("PSR"), utilizing the 2010 edition of the Federal Sentencing Guidelines Manual. (PSR ¶29).

The Offense conduct portion of the PSR contained a comprehensive summary of everyone's purported conduct. Mr. Espinosa-Farias's alleged conduct was summarized at ¶¶51-55, 58-59, 63-64 and 68-72. At ¶72 the Probation Officer recommended that Mr. Espinosa-Farias be held responsible for more than 150 Kilograms of relevant conduct. PSR, ¶72. In the view of the Probation Office, Mr. Espinosa-Farias "...minimized his involvement in the instant offense to such extremes..." and also made statements to the Probation Officer which contradicted his statements to law enforcement when arrested to such an extent that she did not recommend a reduction for acceptance of responsibility. PSR, ¶98.

An offense involving more than 150 kilograms of cocaine has a base offense level of 38. PSR, ¶92. The Probation Officer also recommended a two level increase pursuant to U.S.S.G §2D1.1(b)(1) as a handgun was located in a vehicle located on the premises of the accused's home when it was searched by law enforcement. PSR, ¶93. Without acceptance, this left a Total Offense Level of 40. PSR, ¶101.

His recommended Criminal History Category was II which resulted in an Advisory Guideline Range of 324-405 months. PSR, ¶129. His last offense prior to the instant one was in 1981.

PSR, ¶105.  The most time he had served in prison prior to this sentence was 4 years.  PSR, ¶105.

Trial counsel for Mr. Espinosa Farias filed an Objection to the PSR objecting to the failure to recommend the Acceptance of Responsibility downward adjustment to his Offense Level and the Gun Enhancement.  (RE-675, Objection).  His counsel also filed a separate Sentencing Memorandum reiterating those same objections and requesting a Variance.   (RE-674, Sentencing Memorandum). She pointed out that:

a. He was not substantially enriched as others as reflected in the forfeiture sections of the PSR.

b. He was insatiably addicted to cocaine.

c. He was not the major provider of drugs in this conspiracy.

d. He will be deported and permanently separated from his family.

e. In addition to his not having the largest role in this conspiracy, she also requested a variance based on his age and his health (he was 57 at the time of sentencing).

f. A sentence as recommended by the PSR would be an unwarranted disparity.

(RE-674, Sentencing Memorandum, PP 4-7).

While the government did not file a sentencing memorandum, they did address the Court at sentencing. The Court found the advisory guideline range to be 324-405 months. (RE-745, Tr., Page 2, Line 22). Trial defense counsel argued that Mr. Espinosa Farias had truthfully admitted his conduct and thus an acceptance adjustment should be awarded. The government pointed to the statements the accused had previously made to law enforcement in California that his role was much larger than he was admitting at present. The prosecutor also pointed to trial testimony where some of the persons drugs were supplied to by the accused (which he was presently denying) had identified him at another codefendant's trial as their source. (RE-745, Tr., Page 6). Finally, they pointed to the trial testimony of Charles Jackson, Sr. stating that the accused was a supplier of "...between 20 to a hundred kilos at a time...". (RE-745, Tr., Page 7). The Government ultimately deferred to the Court.

The Court overruled the objection and did not adjust the accused Total Offense Level downward as it found his inconsistencies "...go to the heart of relevant conduct." (RE-745, Tr., Page 10).

The objection as to the gun enhancement was also overruled as the gun was found in a vehicle in "close proximity" to heroin. (RE-745, Tr., Page 13-14).

13

Prior to passing sentence, counsel for the accused reiterated the reasons justifying a variance from her Sentencing Memorandum. In addition, she pointed to additional family circumstances like his mother's serious illness. (RE-745, Tr., Page 17). Mr. Espinosa Farias informed the Court during his allocution that he is 58 years old, is isolated from his family in jail and knows he will be deported back to Mexico. (RE-745, Tr., Page 19).

The Court analyzed the 18 U.S.C. § 3553 factors. (RE-745, Tr., PP. 22-25). The Court then, after crediting him for 25 months he spent in custody in California, imposed a sentence of 340 months, five years of supervised release and the special assessment. (RE-745, Tr., PP. 25-26). The Court then asked if there were any "legal objections" to the sentence imposed and trial counsel stated there were none. (RE-745, Tr., Page 26, Lines 23-25).

The following additional facts from the PSR bear on this sentencing:

a. Alvin Jackson was held responsible for 1,080 kilograms of cocaine. He was also a "manager/supervisor" of at least five other people. PSR, ¶73. He received a sentence of 235 months. PSR, ¶12.

14

b. Mr. Kevin Emerson was responsible for 660 kilos of cocaine. He received a minor role adjustment as a courier. PSR, ¶74. His sentence was 36 months. PSR, ¶13.

c. Mr. Henry Swan's relevant conduct was 720 kilograms but he also received a minor role as a money counter. PSR, ¶76. He was sentenced to 60 months. PSR, ¶15.

d. Mr. Charles Jackson, Sr. was found to be an "organizer/leader" who even involved his own family members in this offense. His relevant conduct was found to be 150 kilos of cocaine. PSR, ¶¶77-78. He was sentenced to life in prison. PSR, ¶17.

e. Mr. Emond Logan's relevant conduct is 1,080 kilos which the probation officer said was "conservative". PSR, ¶85. He was sentenced to 420 months in prison.

f. Mr. James Hayes was assessed relevant conduct of 150 kilograms. PSR, ¶82. He was sentenced to 168 months. PSR, ¶19.

g. Mr. Alvin Anderson was assessed 150 kilograms of relevant conduct. PSR, ¶84. He sentenced wasn't reflected in the PSR.

h. Mr. J. Hampton was sentenced to 348 months. PSR, ¶29.

i. Mr. Damond Bean was sentenced to 264 months. PSR, ¶30

15

j. Miss Larzetta Johnson was sentenced to 90 months.   PSR, ¶31.

k. Miss Felicia Blake was sentenced to 180 months.

l. Miss Tamara Hughes was sentenced to 120 months.

m. Mr. Lindell Brown was sentenced to 204 months.

<u>SUMMARY OF ARGUMENT</u>

Mr. Espinosa Farias's sentence is cruel and unusual and thus in violation of the Eighth Amendment and <u>Graham v. Florida,</u> 560 U.S. ---, 130 S.Ct. 2011 (2011). Under the categorical approach, it is always cruel and unusual punishment to sentence someone to 340 months for this offense when they have not committed a crime prior to the instant offense since 1981, they pled guilty and admitted their conduct, and the gun that was used to enhance his guideline was found in a car on the property that was registered to someone else. Additionally, it is an extreme penalty imposed upon someone who has no supervisory/management culpability. Finally, this punishment bears no relation to the goals of penological sanctions: retribution, deterrence, incapacitation, and rehabilitation.

Under the individual approach, this punishment is grossly disproportionate given the totality of the circumstances in Mr. Espinosa Farias's case. Specifically, given all the facts and circumstances of this case; including the fact that Mr. Espinosa Farias had not committed a crime since 1981 and had only spent at most four years in prison prior to this sentence is grossly disproportionate to the offense at issue here. This inference of gross disproportionality is further validated by a comparison

17

with others sentenced in this case. Accordingly, the sentence should be overturned.

<u>ARGUMENT</u>

***Issue*: Whether the sentence imposed by the district court constitutes cruel and unusual punishment under the Eighth Amendment.**

### *Standard of Review*

The Sixth Circuit "reviews a constitutional challenge to a defendant's sentence de novo." <u>United States v. Copeland</u>, 321 F.3d 582, 601 (6th Cir. 2003). However, when the defendant fails to preserve the issue, the Sixth Circuit will review for plain error. Id. Here, trial counsel did not argue or raise in her filings the Eighth Amendment issue below, and thus the standard of review is plain error.

"Plain error is established where an [1] error [2] that is plain [3] affects the defendant's substantial rights and, [4] in this Court's discretionary view, the error seriously affects the fundamental fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Chambers</u>, 441 F.3d 438, 455 (6th Cir. 2006). Error is "Deviation from a legal rule." <u>United States v. Olano</u>, 507 U.S. 725, 732-733 (1993). "'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" Id. at 734.

"[S]ubstantial rights are affected when [the defendant] shows that the district court failed to comply with the key safeguard in place to protect those rights and that there was no

19

functional substitute for that safeguard." United States v. Murdock, 398 F.3d 491, 497 (6th Cir. 2005). Finally, even an error that is not of constitutional magnitude can seriously affect the fundamental fairness, integrity, or public reputation of judicial proceedings. Murdock, 398 F.3d at 498-499 (district court's failure to inquire into defendant's understanding of the appellate waiver provision in his plea agreement "seriously affect[ed] the fairness, integrity and public reputation" of judicial proceedings).

Under the Eighth Amendment to the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eight Amendment protection against cruel and unusual punishment "flows from the basic 'precept of justice that punishment for [a] crime should be graduated and proportioned to [the] offense.'" Kennedy v. Louisiana, 128 S.Ct. 2641, 2649 (2008) (quoting Weems v. United States, 217 U.S. 349, 367 (1910). To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society. This is because [t]he standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same,

but its applicability must change as the basic mores of society change.  Graham, 130 S. Ct. at 2021 (internal citations and quotation marks omitted).

In Graham, the Supreme Court held that there are three types of proportionality challenges under the Eighth Amendment: categorical restrictions on the death penalty, challenges to the length of term-of-years sentences given all the circumstances in a particular case, and categorical challenges to term-of-years sentences. 130 S. Ct. at 2021-2023.  Mr. Espinosa Farias challenge is to the last two of the three categories.

### *The Categorical Approach*

Under the Eighth Amendment categorical approach, the Supreme Court has developed a two-pronged test. Under this test, the Court:

> [F]irst considers objective indicia of societies standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, the Court must determine in the exercise of its own independent judgment whether the

21

punishment in question violates the Constitution. Graham, 130 S. Ct. at 2022 (internal citations and quotation marks omitted).

When analyzing the objective indicia of national consensus under the first prong, the "clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures." Id. at 2023. Actual sentencing practices are also an important part of the analysis of society's standards. Id. The second prong involves judicial exercise of independent judgment. Such judgment "requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question." Id. at 2026. The independent judgment prong also requires consideration of whether the challenged sentencing practice serves legitimate penological goals. Id.

Obviously, legislation allows a 340 month sentence in this case. Also, counsel is aware this Honorable Court could cite to hundreds of opinions from this and other circuits discussing and even upholding drug sentences of this length. However, in this case, undersigned challenges the independent judgment used in considering the culpability of others at issue. Albeit in a different context, trial defense counsel raised the issues of

22

the wide range of sentences in this particular case handed down to related and coconspirators and stretching from life to dismissals. The court engaged in little if any comparative analysis of the sentences given to those others at issue in this case. This is particularly egregious in light of Mr. Espinosa Farias's age of 58 which makes the 340 month term in effect a life sentence, the denial of a reduction for acceptance of responsibility and his low criminal history score.

As stated above, Mr. Espinosa Farias was held responsible for 150 kilograms of cocaine. Though we respectfully disagree with that ruling and it's concomitant denial of a reduction for acceptance of responsibility, we concede that any review of that issue is precluded by the appellate waiver executed in this case. Furthermore, it should be noted that one of the required items of consideration was the agreement not to file the 21 U.S.C. §851 enhancements mandating a life sentence. However, this effective life sentence leaves Mr. Espinosa Farias no better off than if the enhancements had been filed.

### *The Proportionality Approach*

If this Honorable Court finds this sentence to be in compliance with the Graham categorical test, then this court must examine the sentence to determine if it is grossly disproportionate given all the facts and circumstances in this

23

particular case.

When considering Eighth Amendment challenges to a sentence, this court applies the "narrow proportionality principle" described in Justice Kennedy's concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 995-97, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring). United States v. Hill, 30 F.3d 48, 50 (6th Cir.1994). This circuit views the Eighth Amendment as not demanding strict proportionality between crime and sentence but forbidding "only extreme sentences that are grossly disproportionate." Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy, J., concurring).

Undersigned respectfully submits that all of his arguments made in the analysis of the Categorical Approach above are relevant to and incorporated in analyzing the Proportionality Approach. However, some additional facts are in need of addressing and previously raised ones highlighted.

Mr. Espinosa Farias has not had any convictions since 1981.[1] His longest term of imprisonment since this offense was four years. PSR, ¶105. He had been gainfully employed as an automobile mechanic since that time until around the time of this offense. PSR, ¶125-126. Thus his sentence not only punishes him much more severely than the other offenders in this

---

[1] Though the PSR does at ¶106 contact in 2009, that offense is relevant conduct to the offense of conviction.

case of whose sentences are present in the record, it also ignores his significant work history and the theory of incremental punishments by leaping almost inexplicably from a previous high of four years to 340 months for a 58 year old man.

Additionally, a 340 month long sentence for a 58 year old man who was not an organizer or leader whose plea was at least in part motivated to avoid a 21 U.S.C. §851 mandated life sentence, will discourage plea bargaining and lead to a waste of judicial resources. People in Mr. Espinosa Farias's position advised by competent counsel will have no choice but to be advised to go to trial. Certainly, the requested sentence of no more than 210 months suggested by defense counsel would have been sufficient but no greater than necessary. It also would fulfill not only the intent of the plea agreement as to the accused, but also the 8th Amendment prohibition against grossly disproportionate sentences.

CONCLUSION

Based on the foregoing, the defendant, Roberto Espinosa Farias, respectfully requests that this Court reverse the sentence imposed by the district court and remand for resentencing consistent with the 8th Amendment to the United States Constitution.

Respectfully submitted,

s/J. Patten Brown, III
J. Patten Brown, III
Law Offices of Pat Brown
110 Wall Street, 11th Floor
New York, NY 10005

45 Wintonbury Avenue, Suite 109
Bloomfield, CT 06002
(860) 242-2600
Tn. BPR No. 021970
La Bar Roll No. 21503
CT Juris No. 428424
NY Reg. No. 4607891

26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(c),
FEDERAL RULES OF APPELLATE PROCEDURE

I, J. Patten Brown, III, hereby certify that the foregoing brief contains 5,092 words as stated on the word processing system used in the typing of this document.


S/J. Patten Brown, III
J. Patten Brown, III
Attorney at Law

27

<u>CERTIFICATE OF SERVICE</u>

I, J. Patten Brown, III, hereby certify that I have delivered a copy of the foregoing brief via electronic filing to all counsel of record; and the defendant, Roberto Espinosa Farias, via U.S. Mail.

This the 28th day of May, 2012.

<u>s/J. Patten Brown, III</u>
J. Patten Brown, III
Attorney at Law

<u>ADDENDUM DESIGNATING RELEVANT COURT DOCUMENTS</u>

1.  RE-349, THIRD SUPERSEDING INDICTMENT.

2.  RE-570, PLEA AGREEMENT.

3.  RE-580, MINUTES OF CHANGE OF PLEA.

4.  RE-674, SENTENCING MEMORANDUM.

5.  RE-675, OBJECTION.

6.  RE-676, MINUTES OF SENTENCING HEARING.

7.  RE-682, JUDGEMENT.

8.  RE-691, NOTICE OF APPEAL.

9.  RE-744, TRANSCRIPT, CHANGE OF PLEA.

10. RE-745, TRANSCRIPT, SENTENCING.